UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE A. VILLAGRANA, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 04 C 4603 ) Judge Joan H. Lefkow |
| VILLAGE OF OSWEGO, et al., | ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jose A. Villagrana ("Villagrana"), has filed a four-count Second Amended Complaint against defendants, Village of Oswego, Illinois, including its Board of Fire and Police Commissioners and its Police Department (together, the "Village"), Village of Oswego police officers in their individual capacities (together, "Village police officers), and several others. This Memorandum Opinion and Order addresses only Counts III and IV. Count III is directed at Village police officer Nick Sikora ("Sikora"), while Count IV is directed at the Village and Village police officers Chad Dickey ("Dickey"), Scott Hart ("Hart"), and Mary Zimmerman ("Zimmerman"). This court has jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a). The Village and Village Police Officers Dickey, Hart, Shockley, Sikora and Zimmerman move to dismiss Counts III and IV pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Defendants' Motion to Dismiss is granted in part and denied in part.

## STANDARDS FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). Nevertheless, the court is not required to "ignore any facts set forth in the complaint that undermine the plaintiff's claim [nor does it] assign any weight to unsupported conclusions of law." *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 690 (7th Cir. 1998) (internal citations and quotations omitted).

## FACTS

According to the Second Amended Complaint, taken as true for the purpose of this motion, Villagrana is a Mexican-American male residing in the Village of Oswego, Illinois and employed as a police officer by the Kendall County Sheriff's Office ("KCSO").

In April 2003, Villagrana's neighbor, Mr. Smith ("Smith"), contacted Villagrana to complain about the treatment he received from Village police officer Sikora during Sikora's investigation of a "damage incident" at Smith's home. Specifically, Smith, an African-American, complained that Sikora repeatedly threatened him with arrest and refused to issue a

police report in connection with the "damage incident." Villagrana, like Smith, believed that Sikora's actions were motivated by racial animosity.

Villagrana decided to intervene on Smith's behalf and confronted Sikora with Smith's allegations. Villagrana told Sikora that he believed Sikora's conduct was racially motivated and advised that, in his opinion, "it would be good community policing to provide Mr. Smith with a police report." Sikora took umbrage with Villagrana's accusations and emphatically denied that his actions were in anyway racially motivated.

Shortly thereafter, it was Sikora's turn to complain about Villagrana's conduct. Sikora contacted Villagrana's employer, the KCSO, to report the accusations leveled by Villagrana against Sikora and the Village police department. The following month, in May 2003, an officer from the Village police department again contacted the KCSO to complain about Villagrana. This time the Village police officer accused Villagrana of "improper use of a police radio and broadcast of insulting messages over the police radio."

Then, in January 2004, Village police officers responded to a "domestic situation" at Villagrana's home involving Villagrana and his wife and son. During the investigation, Village police officers Hart and Dickey told an unidentified third party that Villagrana "beat" his son. Officer Hart then repeated this allegation in his report of the incident, which was sent to the Kendall County Sheriff's Office and "others" by Officer Zimmerman. Villagrana disputes that he "beat" his son.

## DISCUSSION

Defendants move to dismiss Counts III and IV of the Second Amended Complaint on multiple grounds. Defendants move to dismiss Count III, which alleges retaliation, because (1)

3

Villagrana was not engaged in constitutionally protected speech when he spoke to Sikora (Certain Def's Mot. to Dismiss at 4-5.); (2) Sikora was exercising his own First Amendment rights in his conversation with the Kendall County Sheriff's Office and therefore cannot be considered to have adversely affected Villagrana's First Amendment rights (Id. at 5; Certain Def's Reply at 2-3.); (3) Sikora is qualifiedly immune from suit. (Certain Defs.' Mot. to Dismiss at 5-7.) Defendants move to dismiss Count IV, which alleges defamation, on the grounds that the Village is absolutely immune from suit because it is a governmental entity and its police officers are similarly afforded absolute immunity since they were acting within the scope of their employment. Finally, defendants move to dismiss Counts III and IV as to Sergeant Shockley because Villagrana fails to allege that he engaged in any wrongful conduct.

## I. Count III: Retaliation in Violation of § 1983

Villagrana alleges that the Village and the Village police officers deprived him of his First Amendment rights in violation of 42 U.S.C. § 1983 when they made certain false and disparaging statements to his employer in retaliation to Villagrana's exercise of his right to free speech.

The parties offer parallel formulations of the elements a non-employee plaintiff must allege to support a § 1983 retaliation claim. Both parties cite *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000), for the proposition that a non-employee plaintiff must show (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated

4

at least in part as a response to the exercise of the plaintiff's constitutional rights. The court notes that the standard suggested by the parties is taken from cases outside the Seventh Circuit.

Seventh Circuit § 1983 retaliation claim precedent pertains exclusively to claims brought by employees against public employers. Thus, the Seventh Circuit has never specifically identified the standards to be applied in § 1983 retaliation claims where, as here, no employment relationship exists between the parties. A judge within this district, however, has found that there is no meaningful distinction in the applicable standards for § 1983 retaliation claims brought either by employees or non-employees. *See Chicago Reader v. Sheahan*, 141 F.Supp.2d 1142 (N.D. Ill. 2001).[1] Indeed, the Seventh Circuit's formulation of the elements for claims brought by employees is remarkably similar to the elements identified by other circuits for claims brought by non-employees. *See DeGuiseppe v. Village of Bellwood*, 68 F.3d 187 (7th Cir. 1995) (requiring a public employee plaintiff to show that they suffered an adverse employee action motivated by the exercise of their free speech rights and that the complained of action was sufficient to present actual or potential danger that the speech of employees will be chilled).

Nevertheless, the court need not here concern itself with whether Villagrana's speech was constitutionally protected, nor undertake the troubling corollary inquiry as to whether a non-employee's speech must touch upon a matter of public concern, nor even specify the requisite level of harm: "likely to chill a person of ordinary firmness" versus "actual or potential danger

---

[1] The *Chicago Reader* court did observe, however, that there may be additional requirements in employment cases. Specifically, since the parties did not dispute that the plaintiff's speech was constitutionally protected, the court elected not to decide whether "protected speech" applied differently in a non-employment context. 141 F.Supp.2d at 1144.

that the speech...will be chilled." This case can instead be resolved simply by evaluating the nature of the complained of retaliatory act.

Not every retaliatory act committed by a public official is actionable under § 1983. *Suarez Corp. Indus.*, 202 F.3d at 687. In particular, "where a public official's alleged retaliation is in the nature of speech, in the absence of threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights." *Id.* (collecting cases); *see also Chicago Reader*, 141 F.Supp.2d at 1145 (noting that "a public official cannot be held liable for exercising his own free speech rights" if the speech is not "threatening or harassing"); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56 (2d Cir. 1999) (holding that, in the absence of threats, intimidation, or coercion, legislators' "disparaging, accusatory, or untrue statements about X-Men fail to state a claim for violation of X-Men's constitutional rights"). This is true even where the plaintiff suffers severe adverse consequences as a result of the retaliatory action. *Penthouse Int'l Ltd. v. Meese*, 939 F.2d 1011, 1015-1016 (D.C. Cir. 1991) (holding that criticism by United States Attorney General Edwin A. Meese, III of third-party companies' selling pornographic material was constitutionally protected even though the companies promptly decided to step selling Penthouse's adult magazines). Moreover, the public official's speech is entitled to constitutional protection even if defamatory. *Suarez*, 202 F.3d at 687.

In the present case, Villagrana alleges that the Village and the Village police officers retaliated against him by making false and disparaging statements to his employer. There is no allegation and no inference to be drawn therefrom that the Village or the Village police officers' retaliatory acts took the form of anything other than speech. Even if the court infers, as it is

obliged to do, that the Village police officers advocated that the KCSO sanction or dismiss Villagrana, absent a threat, intimidation, or coercion, their advocacy is constitutionally protected. Indeed, the "critical line for First Amendment purposes must be drawn between advocacy, which is entitled to full protection, and action, which is not." *X-Men*, 196 F.3d at 71 (quoting *Healy v. James*, 408 U.S. 169, 192, 92 S.Ct. 2338 (1972). Here, the Village police officers' communications were merely advocacy.

Villagrana's employer's warning that allegations such as those made by the Village police officers could subject him to discipline do not evidence that the Village and its police officers adversely affected his First Amendment rights. The Village police officers' statements to the KCSO carried no express threat, nor can they reasonably be interpreted as intimating that the Village police department would punish, sanction or take any adverse action against the KCSO. Moreover, there is no allegation in the complaint that the Village police department had any power to control or influence the KCSO's personnel decisions, or to otherwise bring government power to bear on the KCSO. Whatever pressure the Village police officers exerted on the KCSO, it was far less than that faced by the third-party decision-makers in cases such as *Suarez*, *X-Men*, and *Penthouse* where the courts found that the retaliating public official did not coerce the third-party. In short, the court finds no evidence that the Village police officers' communications with Villagrana's employer were in any way coercive.[2]

---

[2] Because the Village police officers' speech was neither threatening nor coercive, the court need not further address the more fact-intensive issues argued in the motion. Namely, whether Villagrana's conversation with Sikora constitutes constitutionally protected speech and whether Sikora is entitled to qualified immunity.

7

## II. Count IV: Defamation in Violation of Illinois Law

Villagrana alleges that Village police officers Hart and Dickey defamed him in violation of Illinois law when they told an unidentified third-party that Villagrana "beat" his son and then repeated that allegation in a police report that was sent to Villagrana's employer and Village police officer Zimmerman. Count IV seeks relief against the Village and its police officers in their individual capacities.

A. Village of Oswego

The Village moves to dismiss Villagrana's defamation claim on the basis that they enjoy absolute immunity under the Local Governmental and Governmental Employees Tort Immunity Act ("Act"). The court notes that Villagrana fails to address the argument in his response memorandum.

The Act provides: "A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." § 745 Ill. Comp. Stat. 10/2-207. Thus, local governmental agencies are statutorily immune from suit for defamation. *Horwitz v. Bd. of Educ. of Avoca Sch. Dist.*, 260 F.3d 602, 617 (7th Cir. 2001) (finding a school board statutorily immune form a defamation suit brought against its members under the Act). Therefore, Villagrana's Count IV defamation claim against the Village is dismissed.

B. Village Police Officers Hart, Dickey, and Zimmerman

Officers Hart, Dickey, and Zimmerman (together, the "Officers") move to dismiss Villagrana's defamation claim under the common law theory of absolute immunity. The Officers

8

contend that under *Horwitz*, 260 F.3d at 617-618, they enjoy absolute immunity because the alleged defamatory statements were made within the scope of their official duties.

In order to determine whether governmental officials acted within the scope of their authority, the court must, of course, look to the nature of their duties. *Harris v. News-Sun*, 646 N.E.2d 8, 11 (Ill. App. 2nd Dist. 1995). Governmental officials are entitled to absolute immunity only if their statements are reasonably related to their official duties. *Dolatowski v. Life Printing and Publishing*, 554 N.E.2d 692, 695 (Ill. App. 1st Dist. 1990) (quoting *Morton v. Hartigan*, 495 N.E.2d 1159, 1165 (Ill. App. 1986)).

The degree to which the alleged defamatory statements were made within the scope of the Officers' official duties cannot be sufficiently assessed from the face of the Complaint. Villagrana alleges that the defamatory statements were made first to an unidentified third-party and then repeated in a police report that was sent by Zimmerman to the Kendall County Sheriff's Office. The Officers contend that the claim must be dismissed because Villagrana has failed to specify that the third-parties to whom the Officers made their allegedly defamatory statements were unrelated to the investigation. The Officers, however, forget that for purposes of a motion to dismiss the court must "draw all reasonable inferences from the facts in plaintiff's favor. *Dixon*, 291 F.3d at 486. Thus, the court must assume that the unidentified third-parties are in fact unrelated to the investigation and that the Officers lacked any legitimate justification for making defamatory statements in their presence. Accordingly, the determination of whether the unidentified third-parties were related to the investigation, and by extension whether the Officers' statements were reasonably related to their official duties, are issues of fact that cannot be determined at this time. *See Frazier v. Harris*, 266 F.Supp.2d 8532, 874 (C.D. Ill. 2003)

9

(refusing to dismiss a claim of negligent misrepresentation against a police chief on the basis of absolute privilege because the court had to assume the facts supported plaintiffs' allegations). Likewise, it is possible for Villagrana to show that the Officers' delivery of the police report to Villagrana's employer exceeded the scope of their official duties. Therefore, the Officers' motion must be denied with respect to the defamation claims.

### III.     Sergeant Shockley

Defendants move to dismiss Counts III and IV against Sergeant Shockley ("Shockley") because Villagrana makes no specific allegations involving Shockley. Federal Rule of Civil Procedure 8(a)(2) states, in relevant part, that "[a] pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Although Federal Rule of Civil Procedure 8 does not require detailed factual pleading, a plaintiff's assertions must still direct the defendant to the factual cause of the plaintiff's alleged injury." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

Villagrana names Shockley as a defendant in the caption of his Second Amended Complaint, but mentions him only once in the body of the Complaint, stating that Shockley and other Village police officers, "were at all times relevant to this complaint, members of the Oswego police force and are sued in their individual capacities." (Second Am. Compl. ¶ 9). Villagrana pleads no facts pertaining to any retaliatory or defamatory acts by Shockley. As a consequence, Villagrana's failure to plead facts sufficient to put Shockley on notice of the claims alleged against him requires this court to dismiss Counts III and IV against Shockley.

## ORDER

For the reasons stated above, Certain Defendants' Motion to Dismiss Counts III and IV is granted in part and denied in part [# 42]. Counts III and IV against the Village are dismissed. Count III against Officers Hart, Dickey, Sikora and Zimmerman is dismissed. Officers Hart, Dickey, Sikora and Zimmerman's Motion to Dismiss Count IV is denied. Counts III and IV against Shockley are dismissed.

ENTER: /s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 22, 2005